# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
:
MARILY VILLANUEVA, on behalf of herself :
and all others similarly situated, :
: Case No.: 13-cv-05429(CS)(LMS)
:
Plaintiffs, :
:
:
v. :
:
:
WELLS FARGO BANK, N.A., :
:
:
Defendant. :
------------------------------------------------------------- X
:
REGINALD BOWMAN, on behalf of himself :
and all others similarly situated, :
:
:
Plaintiffs, :
:
: Case No.: 14-cv-00648 (CS)(LMS)
v. :
:
:
WELLS FARGO BANK, N.A. and U.S. BANK :
NATIONAL ASSOCIATION, as Trustee under :
the Trust Agreement for the Structured Asset :
Investment Loan Trust, Mortgage Pass Through :
Certificates, Series 2005-8, :
:
Defendants. :
------------------------------------------------------------- x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNCONTESTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARD PAYMENTS

## <u>TABLE OF CONTENTS</u>

**Page No.**

INTRODUCTION…………………………………………………………………………..1

I.      BACKGROUND OF THE ACTIONS……………………………………………...4

II.     SUMMARY OF THE SETTLEMENT…………………………………………...5

III.    STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENT……….…...7

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE…………………9

        A.  The Settlement Is Procedurally Fair……………………………..……………9

        B.  The Settlement Is Substantively Fair…………………………………..…10

            1.  The Actions Are Complex And Will Be Expensive And Lengthy………...……10

            2.  The Reaction Of The Class Was Overwhelmingly Positive…………………..11

            3.  The Current Stage Of The Instant Litigation And The
                Extensive Discovery That Has Occurred Favors Final Approval…………….…13

            4.  Plaintiffs Face Substantial Hurdles In Establishing Liability
                And In Maintaining A Class Through Trial………………………………………..14

            5.  Factors Related To Difficulties In Proving Damages, And The Ability
                Of Defendants To Pay A Judgment Are The Only Factors That Do
                Not Heavily Weigh In Favor Of Approving The Proposed Class
                Settlement………………………………………………………………….…16

            6.  The Settlement Amounts Are Reasonable In Light
                Of The Best Possible Recovery And In Light Of All
                The Attendant Risks Of Litigation……………………………….…....16

V.      NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER…………...19

VI.     THE COURT SHOULD CERTIFY THE CLASS………………………………20

VII.    THE COURT SHOULD APPROVE THE REQUESTED AWARD OF
        ATTORNEYS' FEES TO BE PAID BY WELLS FARGO TO CLASS COUNSEL...20

        A.  Class Counsel Is Entitled To Compensation………………….………………...21

        B.  Wells Fargo Will Pay Class Counsel's Fees At No Cost To The Class……........22

C. The Second Circuit Has Approved Both The Percentage Method
And The Lodestar Method, But The Percentage Method Is Preferred………..……25

D. The Requested Fee Is Justified Under The Percentage Method……..…………...26

  1. The Full Value Of The Settlement Fund Available Is Considered……….……26

  2. The Fee Award Is Supported By The *Goldberger* Factors…………..……….....27

    a. The Time And Labor Expended By Counsel……………….….……..……28

    b. The Magnitude And Complexity Of The Litigation…………..……….…29

    c. The Risk Of The Litigation……………………………….…….……..…29

    d. The Quality Of Representation…………………………………….……...30

    e. The Requested Fee In Relation To The Settlement…………………...….32

    f. Public Policy Considerations……………………………………..………32

E. The Fee Is Justified Under The Lodestar/Multiplier Method…………………..……34

F. The Reaction Of The Class Is Overwhelmingly Favorable………..…………..……36

VIII. THE EXPENSES INCURRED ARE REASONABLE AND
WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED…………..……..37

IX. SERVICE AWARDS……………………………………………………………38

CONCLUSION………………………………………………………………………39

# TABLE OF AUTHORITIES

## Cases

*Aros v. United Rentals, Inc.,*
2012 WL 3060470 (D. Conn. July 26, 2012) ............................................................. 27

*Blessing v. Sirius XM Radio Inc.,*
2012 WL 6684572 (2d Cir. 2012) .............................................................................. 24

*Bricker v. Planet Hollywood New York, L.P.,*
2009 WL 2603149 (S.D.N.Y. Aug. 13, 2009) ............................................................ 22

*Cagan v. Anchor Sav. Bank FSB,*
1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................................. 17

*Cassese v. Williams,*
503 F. App'x 55 (2d Cir. 2012) ................................................................................... 34

*Cavalieri v. General Elec. Co.,*
2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009) ............................................................. 23

*Chambery v. Tuxedo Junction, Inc.,*
2014 WL 3725157 (W.D.N.Y. July 25, 2014) ............................................................ 17

*Charron v. Pinnacle Grp. N.Y. LLC,*
874 F. Supp. 2d 179 (S.D.N.Y. 2012) ........................................................................ 12

*Chin v. RCN Corp.,*
2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ............................................................. 36

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) .................................................................................. 8, 17

*Cohen v. Chilcott,*
522 F. Supp. 2d 105 (D.D.C. 2007) ........................................................................... 25

*Cohn v. Nelson,*
375 F. Supp. 2d 844 (E.D. Mo. 2005) ........................................................................ 24

*County of Suffolk v. Long Island Lighting Co.,*
907 F.2d 1295 (2d Cir. 1990) ..................................................................................... 13

*Dahingo v. Royal Caribbean Cruises, Ltd.,*
312 F. Supp. 2d 440 (S.D.N.Y. 2004) ........................................................................ 27

*deMunecas v. Bold Food, LLC,*
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................................................ 35

*Dornberger v. Metropolitan Life Ins. Co.,*
203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................... 39

*D'Amato v. Deutsche Bank,*
235 F.3d 78, 85 (2d Cir. 2001) ........................................................................... 8, 9

*Elliot v. Leatherstocking Corp.,*
2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) ........................................................ 38

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................................... 10

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ....................................................................................... 21, 27

*Goldberger v. Integrated Resources, Inc.,*
209 F.3d 43 (2d Cir. 2000) .................................................................. 21, 25, 26, 34

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .............................................................................. 24

*Hayes v. Harmony Gold Min. Co. Ltd.,*
509 Fed. Appx. 21 (2d Cir. 2013) ........................................................................... 9

*Hernandez v. Merrill Lynch & Co., Inc.,*
2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...................................................... 35

*Hicks v. Stanley,*
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......................................... 26, 28, 33

*Hubbard v. Donahoe,*
2013 WL 3943495 (D.D.C. July 31, 2013) ........................................................... 25

*In re Abrams & Abrams, P.A.,*
605 F.3d 238 (4th Cir. 2010) ................................................................................ 33

*In re Alloy, Inc. Sec. Litig.,*
2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ........................................................ 22

*In re American Bank Note Holographics, Inc. Sec. Litig.,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................. 11

*In re Apollo Group, Inc. Sec. Litig.*,
  2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) ............................................................ 30

*In re Apple Computer, Inc. Deriv. Litig.*,
  2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ............................................................ 24

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................ 8, 10, 14, 16

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ............................................................ 11

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............................................................ 37, 38

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................................................ 36

*In re Continental Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ............................................................ 24

*In re Fab Universal Corp. Shareholder Derivative Litig.*,
  2015 WL 7299773 (S.D.N.Y. Nov. 17, 2015) ............................................................ 9, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................................ 32, 34, 36, 37

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................ 12, 16

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ 25

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................ 8

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................ 10, 11, 32

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................................................ 38

*In re Michael Milken and Associates Sec. Lit.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................ 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................. 35

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   2011 WL 1398485 (D. Maine April 13, 2011) ....................................... 12

*In re Nissan Radiator/Transmission Cooler Litig.*,
   2013 WL 4080946 (S.D.N.Y. May 30, 2013)........................................... 36

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................ 12, 14

*In re Pall Corp.*,
   2013 WL 3244824 (E.D.N.Y. June 25, 2013)........................................... 34

*In re Penthouse Exec. Club Compen. Litig.*, No. 10-1145,
   2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013)............................................. 9

*In re Polaroid*,
   2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................... 21, 22, 25, 39

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)..................................................................... 37

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   2008 WL 1956267 (S.D.N.Y. May 1, 2008)............................................. 23

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*,
   2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) 2010 WL 3422722.............................. 37

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...........................................Passim

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989)........................................................... 35

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808........................................................................ 21, 30, 38

*In re Vitamins Antitrust Litig.*,
   2001 WL 34312839 (D.D.C. July 16, 2001).............................................. 25

*In re "Agent Orange" Prod. Liab. Litig.*,
   611 F. Supp. 1396 (E.D.N.Y. 1985)......................................................... 18

*Ingles v. Toro,*
    438 F. Supp. 2d 203 (S.D.N.Y. 2006) ....................................................................... 10

*Ingram v. Coca-Cola Co.,*
    200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................. 24

*Johnston v. Comerica Mortgage Corp.,*
    83 F.3d 241 (8th Cir. 1996) .................................................................................... 25

*Lobatz v. U.S. W. Cellular of Cal., Inc.,*
    222 F.3d 1142 (9th Cir. 2000) ................................................................................ 24

*Lopez v. Youngblood,*
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ...................................................... 25

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
    671 F. Supp. 819 (D. Mass. 1987) ......................................................................... 24

*Malchman v. Davis,*
    761 F.2d 893 (2d Cir. 1985) ............................................................................. 23, 24

*Martens v. Smith Barney, Inc.,*
    181 F.R.D. 243 (S.D.N.Y. 1998) ........................................................................... 14

*Masters v. Wilhelmina Model Agency, Inc.,*
    473 F.3d 423 (2d Cir. 2007) ........................................................................ 22, 26, 27

*McBean v. City of New York,*
    233 F.R.D. 377 (S.D.N.Y. 2006) ........................................................................... 22

*McKinnie v. JP Morgan Chase Bank, N.A.,*
    678 F. Supp. 2d 806 (E.D. Wis. 2009) .................................................................. 27

*Missouri v. Jenkins,*
    491 U.S. 274 (1989) ............................................................................................... 35

*Morris v. Affinity Health Plan, Inc.,*
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................... 17

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ............................................................................. 14, 17

*Odom v. Hazen Transp., Inc.,*
    275 F.R.D. 400 (W.D.N.Y. 2011) ......................................................................... 14

*Plummer v. Chemical Bank,*
  668 F.2d 654 (2d Cir. 1982) ............................................................................ 14

*Ressler v. Jacobson,*
  149 F.R.D. 651 (M.D. Fla. 1992) .................................................................... 36

*Robbins v. Koger Props.,*
  116 F.3d 1441 (11th Cir. 1997) ...................................................................... 30

*Spicer v. Pier Sixty LLC,*
  2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ............................................... 35

*Steinberg v. Nationwide Mut. Ins. Co.,*
  612 F. Supp. 2d 219 (E.D.N.Y. 2009) ............................................................ 23

*Stoner v. CBA Info. Servs.,*
  352 F. Supp. 2d 549 (E.D. Pa. 2005) ............................................................. 11

*Taft v. Ackermans,*
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................................... 27

*TBK Partners, Ltd. v. W. Union Corp.,*
  675 F.2d 456 (2d Cir. 1982) ............................................................................ 13

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.,*
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................ 18

*Thompson v. Metropolitan Life Ins. Co.,*
  216 F.R.D. 55 (S.D.N.Y.2003) ........................................................................ 16

*Torres v. Gristede's Operating Corp.,*
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ................................................ 15

*Torres v. Gristede's Operating Corp.,*
  2013 WL 2257859 (2d Cir. May 22, 2013) ............................................... 25, 26

*Trustees v. Greenough,*
  105 U.S. 527 (1881) ......................................................................................... 21

*Velez v. Novartis Pharmaceuticals Corp.,*
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................................ 27

*Viafara v. MCIZ Corp.,*
  2014 WL 1777438 (S.D.N.Y. May 1, 2014) ................................................... 38

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) ................................................................ 8, 21, 22, 26

*Waters v. Int'l Precious Metals Corp.,*
   190 F.3d 1291 (11th Cir. 1999) ................................................................ 26

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) ....................................................................... 7

*Williams v. First National Bank,*
   216 U.S. 582 (1910) ................................................................................. 7

*Williams v. MGM-Pathe Communications Co.,*
   129 F.3d 1026 (9th Cir. 1997) ................................................................ 26

*Willix v. Healthfirst, Inc.,*
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ............................................ 15

## Statutes

N.Y. Real Prop. Acts Law § 1921 ......................................................... 1, 31, 33

N.Y. Real Prop. Law § 275 ..................................................................... 1, 31, 33

## Rules

Fed. R. Civ. P. 23(a), (b)(3) and (e) ................................................................ 1

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................ 19

Fed. R. Civ. P. 23(c)(3) ............................................................................ 19

Fed. R. Civ. P. 23(e)(2) .............................................................................. 8

Fed. R. Civ. P. 23(f) ................................................................................. 15

Fed. R. Civ. P. 23(h) ................................................................................ 23

## Other Authorities

4 Newberg, Class Actions § 14:6 (4th ed. 2002) ....................................... 27

Manual for Complex Litigation, Fourth, § 21.71 p. 525 ............................. 25

Plaintiffs Marily Villanueva and Reginald Bowman, individually and on behalf of the proposed Class, submit this memorandum of law in support of their motion for final approval of the class action settlement as set forth in the Stipulation and Agreement of Settlement, dated November 9, 2015 (the "Settlement" or "Settlement Agreement") (Dkt. No. 66-1) pursuant to Federal Rule of Civil Procedure 23(a), (b)(3) and (e), for attorneys' fees and expenses, and service award payments to the named Plaintiffs.

## <u>INTRODUCTION</u>

In these actions, Plaintiffs allege that Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank National Association, as Trustee under the Trust Agreement for the Structured Asset Investment Loan Trust, Mortgage Pass Through Certificates, Series 2005-8 ("U.S. Bank" and together with Wells Fargo, the "Defendants") failed to timely present certificates of discharges to New York county clerks for recording in violation of N.Y. Real Prop. Acts Law § 1921 and N.Y. Real Prop. Law § 275. Defendants contest any liability to Plaintiffs and the proposed settlement class as defined in the Settlement Agreement (the "Class").

After extensive and hard-fought litigation, which included motion practice and substantial discovery, and after an arm's length mediation, Plaintiffs, individually and on behalf the Class, and Defendants have agreed to a proposed settlement of these actions pursuant to the terms of the Settlement Agreement. This Court granted preliminary approval of the Settlement on December 3, 2015, certifying the class for settlement purposes and authorizing the dissemination of class notice.

Plaintiffs respectfully request that this Court now grant final approval. <u>First</u>, the Settlement offers substantial benefits to Class members and avoids the delay, expense and risks

inherent in litigating class claims through trial and appeal.  The maximum potential recovery if

the case were to be litigated to judgment by trial would be $6,473,000, or for individuals,

between $500 and $1500 for statutory violations.  The Settlement makes available to Class

Members between $190 and $900, or $2,711,530 in the aggregate.  This amount represents 42%

of the total potential class damage recovery, if Plaintiffs were to succeed in certifying a class

(and subsequently defeating Defendants' decertification motion), survive summary judgment,

win at a trial, and then overcome the inevitable appeals.  <u>Second</u>, the Settlement was the product

of arm's length negotiations aided by an independent mediator and conducted by experienced

counsel who obtained extensive formal and informal discovery in the actions and, as such, were

well-positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the

potential damages incurred by the Class, and the fairness of the Settlement.  <u>Third</u>, the positive

response from the Class augers in favor of approving the Settlement.  Not only was the claims

rate high (18%), but only three Class members opted out of the Settlement (or .039% of the

class), and there has not yet been a single objection to the Settlement.  Class Counsel also

received inquiries from 170 Class members about the claims process and the Settlement, and

nobody expressed any reservations about the amounts indicated in the Settlement, including

Class Counsel's anticipated fee request.  Thus, Plaintiffs hereby apply for the entry of an order

that will certify the proposed Class and finally approve the Settlement.

 Class Counsel also moves for an award of attorneys' fees and expenses in the amount of

$894,805 or 24.2% of the total value of the Settlement (which includes the total amount made

available to the Class, the requested attorneys' fees, expenses, and service award payments

sought, and the cost of settlement administration).  The requested amount represents a modest

lodestar multiplier of 1.1, well within the range of awards commonly approved within this

Circuit. Wells Fargo has agreed to pay an award the Court approves up to this requested amount, which is separate and apart from the benefit to be received by Class members and in no way diminishes their recovery. Indeed, if the Court were to deny the requested award for fees and expenses, in whole or in part, none of the amount Well Fargo has agreed to pay Class Counsel would be paid to the Class. Rather, Wells Fargo's aggregate settlement costs would simply be reduced. Thus, barring Class Counsel from receiving the requested attorneys' fees and expenses would simply benefit Wells Fargo, without any offsetting gain to the Class. As the amount requested (i) has been agreed upon by the parties through arm's length negotiations; (ii) will not in any way diminish the recovery of the Class; (iii) falls well within the range of attorneys' fees and expenses awarded by courts within this Circuit using either the percentage of the fund or lodestar methodology; and (iv) was adequately disclosed in advance to the Class through various notices and not objected to, this Court should approve the requested attorneys' fees and expenses to compensate Class Counsel for the outstanding result achieved.

Class Counsel also requests that the Court approve the payment of service awards to the named plaintiffs in the amount of $5,000 each to compensate them for the time and effort spent in assisting in the prosecution of the actions on behalf of the Class. Defendants have agreed not to contest the service award request. Moreover, as with Class Counsel's fee request, the service award request was subject to arm's length negotiations between parties, is comparable to other service award payments in other class actions, and was adequately disclosed in advance to the Class and not objected to. Wells Fargo has agreed to pay the requested service awards the Court approves up to this requested amount, which is separate and apart from the benefit to be received by Class members and in no way diminishes their recovery.

## I.      **BACKGROUND OF THE ACTIONS**

Before bringing these actions, Class Counsel exhaustively investigated the claims of Plaintiffs and the proposed Class, and independently obtained copies of the relevant recorded mortgages and lien release documents.  Declaration of D. Greg Blankinship ("Blankinship Dec.") ¶ 3.  With this information in hand, Plaintiff Villanueva filed a putative class action complaint on August 2, 2013, docketed as 13-CV-05429, against Wells Fargo in the U.S. District Court for the Southern District of New York.  She subsequently amended the complaint on October 11, 2013 (the "Villanueva Action").  Plaintiff Bowman also filed a putative class action complaint on January 31, 2014, docketed as 14-CV-00648, against Wells Fargo and U.S. Bank, in the U.S. District Court for the Southern District of New York.  He subsequently amended the complaint on April 1, 2014 (the "Bowman Action").  The two cases are pending before Judge Cathy Siebel and were deemed related cases on February 4, 2014.

The parties briefed motions to dismiss the respective Actions.  On July 31, 2014, Judge Seibel issued an oral ruling granting in part and denying in part the motions and allowed the Actions to proceed against Defendants.  After Defendants filed their respective answers in the Actions, the parties engaged in substantial discovery, which included conferring and writing letters to the Court on discovery issues, motion practice on the limitations period applicable to Plaintiffs' statutory claims, depositions of four Wells Fargo witnesses, a series of document requests and interrogatories to Defendants, review of over 2,000 pages of documents, data on over 2,800 lien releases produced by Wells Fargo, and several hundred pages of documents produced by non-parties.  Blankinship Dec. ¶ 5.  Plaintiffs also responded to document requests and interrogatories from Defendants and prepared for further depositions of Wells Fargo witnesses, as well as depositions of Plaintiffs and a non-party.  *Id.*  Defendants also provided

substantial informal discovery in advance of the mediation.  *Id.*  As a result of their discovery efforts, both sides had an informed view of the strengths and weaknesses of Plaintiffs' cases and Defendants' defenses, and they had a basis for determining the amount of monetary relief that would be reasonable and appropriate in a settlement context.

On July 14, 2015, the parties engaged in a day-long mediation session before JAMS mediator David Geronemus, Esq.  Blankinship Dec. ¶ 7.   It was only after extended arm's length negotiations under the auspices of Mr. Geronemus that the parties reached an agreement in principle with respect to a compromise and settlement of the claims raised in the Actions.  *Id.*

## II.   **SUMMARY OF THE SETTLEMENT**

Plaintiffs have weighed the costs and benefits to be obtained under the Settlement against the costs, risks and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any rulings in favor of either the Class or Defendants.  As a result, Plaintiffs believe that the Settlement provides substantial benefits to the Class, and is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class.  Against this backdrop, and in the interest of avoiding protracted and costly litigation, the parties have agreed to a proposed Settlement as described below.

The gravamen of the Actions is that Wells Fargo (and, in certain instances, U.S. Bank) failed to timely present to New York recording officers lien releases on certain residential mortgages that Wells Fargo serviced after the mortgages had been fully paid.  The proposed Class is defined as:

> All persons and/or entities who were the mortgagor party to a residential mortgage on real property located in New York State serviced by Wells Fargo Bank, N.A. for which all authorized principal, interest and all other amounts due or otherwise owed by law was completely paid after August 2, 2010 and before May 15, 2015, and a certificate of discharge or satisfaction of mortgage was not presented within 30 days to the recording officer of the county where the

mortgage was recorded.  Serviced means that Wells Fargo Bank, N.A. acted as (a) the entity to whom payments under the residential mortgage were required to be made or (b) such entity's personal representative, agent, successor or assign.

Wells Fargo has determined from its records the number of residential mortgaged properties for which a lien release was presented late to the recording officer for the first time (and not subject to a rejection) or presented late after previously being rejected.  Wells Fargo has confirmed that lien releases on residential mortgaged properties were presented "late" -- *i.e.*, more than 30 days after the residential mortgage was fully paid -- for the first time as follows: 833 were presented between 31 and 60 days; 173 between 61 and 90 days; and 370 more than 90 days.  Wells Fargo has further confirmed that lien releases on residential mortgages were presented late, after previously being rejected, as follows: 3,379 were presented between 31 and 60 days; 1,329 between 61 and 90 days; and 1,540 more than 90 days.  In sum, a total of 7,624 lien releases on residential mortgages fall within the definition of the proposed Class.

Under the Settlement, class members for whom mortgage lien releases were presented late to the recording officer for the first time are eligible to receive 60% of the amounts recoverable under New York's lien release statutes.  Thus, they are eligible to receive cash payments as follows: $300 when the mortgage lien release was presented between 31 and 60 days after satisfaction; $600 when it was presented between 61 and 90 days after satisfaction; and $900 when it was presented more than 90 days after satisfaction.  Class members for whom mortgage lien releases were presented late to the recording officer after previously being rejected are eligible to receive 38% of the amounts recoverable under the same statutes:  $190 when the lien release was presented between 31 and 60 days after satisfaction; $380 when it was presented between 61 and 90 days after satisfaction; and $570 when it was presented more than 90 days after satisfaction.

To receive payment, Class members were required to submit a timely and valid "Proof of Claim," which the Court approved in form and substance. Making a claim was quite easy. Class members could make a claim either on-line through the settlement website created by the Settlement Administrator or by mail. Moreover, using the unique identification information provided on the notice mailed to each Class members, certain of the information required for the Proof of Claim was automatically populated on the Proof of Claim form if it was submitted through the settlement website.

In addition, under the Settlement Agreement, Defendants will separately pay the cost of notice and settlement administration up to $75,000, and the Settlement Administrator has agreed to perform the duties identified in the Settlement Agreement for no more than that amount.

In return for making settlement benefits available to all Class members, the Class Representatives' claims against Defendants will be dismissed with prejudice, and all Class members (other than the three Class members who properly requested to be excluded from the Class) will release and be permanently barred from pursuing any "Settled Claims" against Defendants and other "Released Parties" in accordance with the provisions of the Settlement Agreement and the proposed Order and Judgment to be entered upon final approval of the settlement. A copy of the proposed Order and Judgment (Dkt. No. 66-8) is attached as Exhibit B to the Settlement Agreement (Dkt. No. 66-1).

## III.   STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENT

Strong judicial policy favors the settlement of class actions. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.") (citing 3 Newberg, Class Actions § 5570c, at 479–80 (1977); *Williams v. First National Bank*,

216 U.S. 582, 595 (1910)).  "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  There is a strong public interest in quieting any litigation; this is particularly true in class actions."  *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

Courts assess proposed class action settlements to determine whether they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To do so, courts must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate and reasonable.  *See D'Amato v. Deutsche Bank*, 235 F.3d 78, 85 (2d Cir. 2001).  Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The Second Circuit identified nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462–63 (2d Cir. 1974), that district courts should consider in evaluating a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Each of these factors militates in granting final approval of the Settlement.

IV.    **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

    A.    **The Settlement Is Procedurally Fair**

This Settlement, reached as a result of arm's length negotiation after protracted, hard-fought litigation and mediation, meets the standard for procedural fairness.  In determining whether a settlement is procedurally fair, courts evaluate the "negotiating process, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  *D'Amato*, 236 F.3d at 85.

Here, the standards of procedural fairness are met.  "The parties are represented by experienced counsel, supporting a conclusion that the settlement negotiations were based on informed judgments as to the merits of the claims and defenses."  *In re Fab Universal Corp. Shareholder Derivative Litig.*, No. 14-687, 2015 WL 7299773, at *2 (S.D.N.Y. Nov. 17, 2015) (finally approving settlement).  In particular, Class Counsel was well positioned to evaluate the strengths and weaknesses of Plaintiffs' claims owing to the extensive formal and informal discovery had in the Actions and their extensive experience and knowledge in the area of complex and class action litigation.  *See* Blankinship Dec. ¶¶ 5, 6, 11-16, and Exhibit 1.  Moreover, an independent and experienced mediator from JAMS, David Geronemus, conducted neutral settlement negotiations. *See Hayes v. Harmony Gold Min. Co. Ltd.*, 509 Fed. Appx. 21, 23 (2d Cir. 2013) (unpublished) (finally approving class settlement over objection of class representative because "the proposed settlement, on terms recommended by an independent and experienced mediator, was procedurally and substantively fair"); (citations omitted); *In re Penthouse Exec. Club Compen. Litig.*, No. 10-1145, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("The assistance of two experienced mediators, David Geronemus of JAMS and Martin Scheinman, Esq., reinforces that the Settlement

Agreement is non-collusive."); *In re Fab Universal Corp. Shareholder Derivative Litig.*, 2015 WL 7299773, at *2 ("The Proposed Settlement was the product of extensive formal mediation aided by a neutral JAMS mediator, hallmarks of a non-collusive, arm's-length settlement process."). And "[t]he Settlement was not conditioned on the approval of Counsel's fee award request, further evidencing arm's-length negotiations." *In re Fab Universal Corp. Shareholder Derivative Litig.*, 2015 WL 7299773, at *2. Therefore, this Court should find that the Settlement is procedurally fair.

**B.      The Settlement Is Substantively Fair**

The Second Circuit's *Grinell* factors guide this Court's decision as to whether it should approve the Settlement. "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (internal quotation and citations omitted). "The weight given to any particular factor will vary based on the facts and circumstances of the case." *Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006) (citing 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 1797.1, at 77 (3d ed. 2005)).

**1.      The Actions Are Complex And Will Be Expensive And Lengthy**

The Settlement Agreement provides substantial monetary benefits to the Class while avoiding the significant expenses, delays and risks attendant to motion practice related to summary judgment and class certification, not to mention trial and appeals. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (same). While Plaintiffs are confident that they would prevail on class certification and defeat any

summary judgment motions, such results are not certain.  Moreover, the resulting fact-intensive

trial will require the Court's time and resources, and will also result in significant expenses to the

parties as well.  Any final judgment (and any decision on class certification) will likely be

appealed, increasing the costs and length of the litigation.  The Settlement Agreement, on the

other hand, will result in prompt and equitable payments to the Class.  Thus, this factor weighs in

favor of approving the Settlement.  *See In re Marsh ERISA Litig.*, 265 F.R.D. at 138-39 ("[E]ven

if the Class were to win a judgment at trial, the additional delay of trial, post-trial motions and

appeals could deny the Class any actual recovery for years, further reducing its value.").

### 2.     The Reaction Of The Class Was Overwhelmingly Positive

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant

factor to be weighed in considering its adequacy."  *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d

358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F.

Supp. 2d 418, 425 (S.D.N.Y. 2001) (citation omitted)).

Here, Class member response to the Settlement was overwhelmingly positive.

First, 1,357 Class members submitted claims, of which 1348 (or about 18% of the Class)

were determined to be timely and valid claims.  Declaration of Lori L. Castaneda, Garden City

Group, LLC (GCG) Vice President of Operations ("GCG Dec."), ¶ 16.   Numerous courts have

found claims rate far lower to be indicative of a positive class reaction.  *See, e.g., Stoner v. CBA Info.*

*Servs.*, 352 F. Supp. 2d 549, 552 (E.D. Pa. 2005) ("Over 16% of 11,980 class members notified have

submitted claim forms seeking to participate in the settlement.  Only 18 members have chosen to opt

out and only five have filed what could be considered objections to the proposed settlement. This

relatively high response rate indicates a more than favorable class reaction."); *In re Cardizem CD*

*Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (finding favorable class reactions in a 6.9%

response rate (1800 proofs of claim out of 26,000 notices sent) and a 9% response rate (37,000 proofs of claim out of 400,000+ notices sent); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2011 WL 1398485, at *3 (D. Maine April 13, 2011) (finding favorable class reaction in a 3.9% response rate based on 438,169 claims out of 11.3 million eligible claimants).

Second, only three Class members, or .039% of the Class, opted out, and not a single Class member has objected to the Settlement thus far (the deadline for objections is April 7, 2016 and Plaintiffs will address any objections that might be submitted in their reply papers). GCG Dec. ¶¶ 20-21. The Settlement Administrator notes that the number of opt-outs is remarkably small for a class of this size. *Id.* ¶ 20. That there were a *de minimus* number of opt-outs and no objectors in this class action is especially noteworthy, as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of the procedures and deadlines for filing such responses with the court . . . in litigation involving a large class, such as that here, it would be extremely unusual not to encounter objections." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012). "In fact, the lack of objections may well evidence the fairness of the Settlement." *Maley*, 186 F. Supp. 2d at 362 (citing *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). And courts routinely find that the reaction of the class is positive and weigh this factor in favor of approval even when there are more objections and opt-outs. *See, e.g., Charron*, 874 F. Supp. 2d at 196 (118 objectors from a class of 22,000); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (noting that there were 12 objectors and 9 opt-outs from a class of a million and holding that "[t]hese extremely low numbers of objectors and opt-outs strongly support settlement approval.").[1]

---

[1] In fact, courts in this District have approved settlements even when a majority of the class objected. *See, e.g., County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir.

One hundred seventy (170) Class members contacted Class Counsel with various inquiries regarding the process for making claims and the Settlement itself.  Blankinship Dec. ¶ 9.  Not a single caller expressed any reservations regarding the Settlement amounts or the anticipated fee request.  *Id.*

The lack of objectors and small number of opt-outs, combined with the high claims rate, weigh heavily in favor of the Settlement.

### 3.    The Current Stage Of The Instant Litigation And The Extensive Discovery That Has Occurred Favors Final Approval

The Actions have been pending for more than two and a half years.  Numerous legal issues in these cases have been thoroughly vetted through aggressive motions to dismiss that were fully briefed in the Actions.  *See* Dkt. Nos. 8, 10, 13, 14-16, 17-18, 19-20 and 26 for the Villanueva Action, and Dkt. Nos. 11, 16, 26-28, 29-30, 31-32 and 34 for the Bowman Action.  The parties also fully briefed a motion to compel, met and conferred on discovery and substantive disputes, wrote letters to the Court and appeared in Court to address various discovery issues.  *See* Dkt. Nos. 31, 34, 35, 38, 41, 42, 47-48, 49, 50, 51, 52 and 54 for the Villanueva Action, and Dkt. Nos. 39, 42, 44, 47, 49, 50, 55-56, 57, 58, 59, 60 and 62 for the Bowman Action.  Moreover, they have engaged in extensive formal discovery.  Plaintiffs deposed four Wells Fargo witnesses, served a series of document requests and interrogatories upon Defendants, and reviewed over 2,000 pages of documents, data on over 2,800 lien releases produced by Wells Fargo and several hundred pages of documents produced by a non-party.  Blankinship Dec. ¶ 5.  They also responded to document requests and interrogatories propounded by Defendants and prepared for further depositions of Wells Fargo witnesses as well as depositions of Plaintiffs and a non-party.  *Id.*  Given the extent of motion practice and discovery

1990) (approving settlement where "a majority" of class objected); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (between 54 and 58 percent of class objected).

that preceded and informed the settlement negotiations, final approval of the Settlement is warranted.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 ("'To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.'  Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement  . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.'") (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) and quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

### 4.      Plaintiffs Face Substantial Hurdles In Establishing Liability And In Maintaining A Class Through Trial

The Settlement Agreement should be approved because Plaintiffs face substantial hurdles in establishing liability.  Indeed, "[l]itigation inherently involves risks."  *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. at 126 (approving settlement); *see also Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 412 (W.D.N.Y. 2011) (approving settlement and recognizing "the concomitant risks and costs necessarily inherent in taking any litigation to completion.") (citing *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

Plaintiffs face a substantial risk at class certification, not the least reason being that whether a class of mortgagors bringing claims under New York's mortgage satisfaction laws should be certified is a matter of first impression.  Moreover, Defendants will argue, among other things, that a significant reason that mortgage satisfactions are sometimes presented late is because there are variations in the requirements various counties impose when setting rules for the presentment of satisfactions.  Plaintiffs anticipate that their response, namely that county requirements are well known to lenders like Wells Fargo and it is only a failure to devote

sufficient resources that result in lenders' noncompliance, will be persuasive, but Plaintiffs recognizes that Defendants' argument is colorable.  Moreover, the Court might conclude that a class action is not the superior means of adjudicating the claims of the members of the proposed class because the statutory penalties are sufficient to incentive individual suits (notwithstanding that counsel is unaware of any such individual suits or that the cost of bringing individual suits might far outstrip any potential recovery).

Indeed, the fact that Plaintiffs had not yet moved for class certification, and that Defendants would certainly move to decertify the class even if a class is certified, highlights the inherent risk and expense of maintaining a class through trial irrespective of the particular arguments Defendants proffer.  *See Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) *aff'd,* 519 F. App'x 1 (2d Cir. 2013) ("The risk of maintaining class status throughout trial also weighs in favor of final approval. Defendants would likely move to decertify, requiring another round of briefing. Defendants may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Settlement eliminates the risk, expense, and delay inherent in this process."); *Willix v. Healthfirst, Inc.*, No. 07-1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) ("The risk of maintaining class status throughout trial also weighs in favor of final approval.  A motion to decertify the class would likely require extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process.  The fifth *Grinnell* factor weighs in favor of final approval.").

While Class Counsel is confident in its ability to prove Plaintiffs' (and the Class's) claims, the Settlement Agreement nonetheless avoids the risks inherent in further litigation, and therefore, this factor weighs in favor of preliminary approval.

**5.     Factors Related To Difficulties In Proving Damages, And The Ability Of Defendants To Pay A Judgment Are The Only Factors That Do Not Heavily Weigh In Favor Of Approving The Proposed Class Settlement**

Putting aside the substantial difficulties that Defendants contend Plaintiffs face in establishing liability and certifying the Class, Plaintiffs do not anticipate significant hurdles in proving each Class members' damages or in recovering any damage award that might have been rendered after trial.  To the contrary, Wells Fargo has identified the length of time between when each member of the Class fully paid their mortgages and when a related lien release was presented and not rejected, which would determine the applicable statutory damage amount.  Nor are Plaintiffs concerned that Defendants cannot pay a substantial judgment.  However, "[i]n finding that a settlement is fair, not every [*Grinnell*] factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (approving settlement and quoting *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y.2003) (approving settlement)).  Moreover, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178 n.9.

**6.     The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation**

Class members are eligible to receive either 60% or 38% of their potential recovery under New York's lien release statutes, depending on whether the lien release was presented late to the recording officer for the first time or presented late after previously being rejected.  Importantly, that recovery will not be reduced by an award of Class Counsel's fees and expenses or the Class Representatives' service award, if approved by the Court, or by the settlement's administrative costs.  Such a substantial recovery merits approval of the Settlement, particularly in light of the time and uncertainty involved in continued class litigation and inevitable appeals.

Judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). Instead, "there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693 (approving settlement for $5 million where potential liability was $35 million). Even where a settlement is for substantially less than the maximum potential recovery, approval may be appropriate. *See Grinnell Corp.*, 495 F.2d at 455 n. 2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even an thousandth part of a single percent of the potential recovery."); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where maximum potential recovery was approximately $121 million); *Chambery v. Tuxedo Junction, Inc.*, No. 12- 6539, 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) ("[A] $200,000 settlement is reasonable where the potential recovery is $3 million, especially when taking into consideration Defendants' financial position and the risks of litigation."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (approving settlement of $2.5 million over objection that best possible recovery was $125 million).

Here, assuming that members of the Class may only obtain one recovery under the two New York lien release statutes at issue, the maximum potential recovery if the case were to be litigated to judgment by trial would be $6,473,000. The $2,711,530 Wells Fargo has made available for claimants is 42% of that amount -- and the $3,691,335 total potential value of the settlement (which includes attorneys' fees and costs and administrative expenses that would

otherwise reduce any award that Class members might collect if successful at trial) is 57% of that amount.  Of the $2,711,530 made available to claimants, 17.30% ($469,070) has been validly claimed.  GCG Dec. ¶ 16.  According to the Settlement Administrator, 17.30% is a high recovery rate in a class action settlement.  *See id.* ¶ 16.  Moreover, the individual amounts Class members will receive are substantial, ranging from $190 to $900 depending on how late the lien release was presented and whether it was presented after an initial rejection.  On the other hand, Defendants could prevail on their legal arguments to defeat liability or class certification, resulting in no recovery for class members.  Given this broad range of possible damages, the Settlement Agreement falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the settlement.  *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road.  Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)).

Therefore, evaluated collectively, these nine factors militate in favor of approving the Settlement Agreement.

## V.   NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, the Court approved "the form, substance and requirements of the Class Notice, the Postcard Notice, the Reminder Notice, and the Publication Notice (collectively, the 'Settlement Notices') and of the Proof of Claim."  Preliminary Approval Order, dated December 3, 2015 (Dkt. No. 67), at 5.  The Court further found that the "procedures established for the publication, mailing and distribution of the Settlement Notices and Proof of Claim . . . constitute the best notice practicable under the circumstances, are in full compliance with the notice requirements of due process and Rule 23 . . . and shall constitute due and sufficient notice to all persons entitled to notice."  *Id.*

Pursuant to the schedule approved by the Court for the dissemination of the Settlement Notices (Dkt. No. 67 at 5-6), Wells Fargo provided the Settlement Administrator with the names and mailing addresses (as reflected in its records) of 7,624 Class members on December 10, 2015; the Settlement Administrator mailed the Postcard Notice to Class members on January 4, 2016 after confirming and updating the mailing addresses based on the National Change of Address Database and conducted a one-time skip trace for undelivered mail to determine proper

mailing addresses; the Settlement Administrator caused the Publication Notice to be published in U.S.A. Today (New York Regional Edition) on January 4, 2016; the Settlement Administrator mailed the Reminder Notice to Class members on February 1, 2016; and the Settlement Administrator established a website containing all the information required by this Court and a phone line for inquiries from Class members on January 4, 2016.[2]  GCG Dec. ¶¶ 6-8, 11, and 17-18.

As the Settlement Notices were disseminated in strict compliance with this Court's directives, and notice to Class members was conducted in the best practicable manner, this Court should grant final approval of the Settlement.

## VI.     THE COURT SHOULD CERTIFY THE CLASS

Plaintiffs asked this Court to preliminarily certify the Class for settlement purposes, and it did so on December 3, 2015 (Dkt. No. 67).  For the reasons identified in Plaintiffs' Memorandum of Law in Support of Uncontested Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 65 at 18-24), this Court should certify the Class.

## VII.    THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES TO BE PAID BY WELLS FARGO TO CLASS COUNSEL

Wells Fargo has agreed to pay Class Counsel up to $894,805 in attorneys' fees, costs and other litigation expenses, which amount is separate and apart from the benefit to be received by Class members.  Any reduction in the amount requested by Class Counsel will not increase the Class members' recovery but will decrease the aggregate amounts to be paid by Wells Fargo in

---

[2] Under the Court's Preliminary Approval Order, entered on December 3, 2015, the Postcard Notices were to be mailed within 30 calendar days following the entry of the Order.  The same deadline was set for the publication of the Publication Notice and the creation of the Settlement Website.  As the last day of the period fell on a Saturday, January 2, 2016, compliance was had on the next business day, January 4, 2016, with respect to the Postcard and Publication Notices and Settlement Website.

the Settlement.  As set forth more fully below, Class Counsel's proposed $894,805 award for fees and expenses merits approval.

A.      **Class Counsel Is Entitled To Compensation**

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Trustees v. Greenough*, 105 U.S. 527 (1881); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)).  Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims."  *Steiner v. Williams*, No. 99-101186, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001).  Indeed, the contingency fee awarded to class counsel should be greater than the fees that the same attorneys would charge their clients in non-contingency cases.  "No one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-1695, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) (same).[3]

District courts in the Second Circuit may award attorneys' fees to prevailing class counsel under either a "percentage of the fund" or "lodestar" method to compute fees in common fund cases.  *See Wal-Mart*, 396 F.3d at 121; *In re Polaroid*, No. 03-8335, 2007 WL 2116398, at

---

[3] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) (citing *Maley*, 186 F.Supp.2d at 369) ("Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.")).

*2 (S.D.N.Y. July 19, 2007).  However, "[t]he trend in this Circuit is toward the percentage

method."  *Wal-Mart*, 396 F.3d at 121; *see also Polaroid*, 2007 WL 2116398, at *2.  In addition,

the award must be based on "the total funds made available, whether claimed or not."  *Masters v.*

*Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).

      Under either method, Class Counsel's proposed $894,805 award for fees and expenses,

representing 24% of the value of the aggregate settlement amount (*i.e.*, the amount available to

the Class plus attorneys fees and expenses, service awards and administrative costs), merits

approval and falls well within the range of class counsel fees approved in comparable cases

using either method.  *See Polaroid*, 2007 WL 2116398, at *2 (awarding 28%); *Bricker v. Planet*

*Hollywood New York, L.P.*, No. 08-443, 2009 WL 2603149, at *2 (S.D.N.Y. Aug. 13, 2009)

(awarding 25%); and *In re Alloy, Inc. Sec. Litig.*, No. 03-1597, 2004 WL 2750089 (S.D.N.Y.

Dec. 2, 2004) (awarding 24%).

     **B.**    **Wells Fargo Will Pay Class Counsel's Fees At No Cost To The Class**

      Before applying either method, it is important to recognize that Wells Fargo has agreed to

pay Class Counsel's fees from its own resources.  As a result, the fee award will have no impact

whatsoever on the benefit afforded to the Class members.  When the settling defendant agrees to

pay class counsel's fees from its corporate treasury, independent of the benefit obtained for the

class, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no

conflict of interest between attorneys and class members."  *McBean v. City of New York*, 233

F.R.D. 377, 392 (S.D.N.Y. 2006).  Here, Wells Fargo has agreed to pay Class Counsel's fees and

expenses in an amount not to exceed $894,805.  As a result, the fee award will not diminish the

benefits provided to the Class members.  "Thus regardless of the size of the fee award, class

members . . . will receive the same benefit; the fee award does not reduce the recovery to the

class.  Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008).  Courts have approved the payment of class counsel fee awards by the defendant, rather than the Class members.[4]

Moreover, a fee negotiated between the parties is preferable because, as a market-set price resulting from opposing interests, it is the most accurate method of determining an appropriate fee.  Defendants have an interest in minimizing the fee, Class Counsel has an interest in maximizing it, and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court may award if the matter were litigated.[5]  In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the Court of Appeals for the Second Circuit concluded that courts should be hesitant to interfere in fee arrangements between the plaintiffs and the defendants when the defendants have agreed not to oppose the payment of fees up to a certain amount:

> [W]here ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.  It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Malchman*, 761 F.2d at 905 n.5.  Similarly, in *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th

---

[4] *See e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (noting "with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant].  In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members."); *Cavalieri v. General Elec. Co.*, No. 06-315, 2009 WL 2426001, at *3 (N.D.N.Y. Aug. 6, 2009) (same).

[5] The Federal Rules of Civil Procedure expressly authorize the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration . . .").

Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests, stating "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price," but rather "to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* at 568.[6]

In fact, the Second Circuit rejected an objector's argument relating to a negotiated fee provision holding "that such provisions, without more, do not provide grounds for vacating the fee." *Blessing v. Sirius XM Radio Inc.*, No. 11-3696, 2012 WL 6684572, at *2 (2d Cir. 2012). The Second Circuit found support for its position in the fact that the district court independently analyzed the fee request (an analysis that Class Counsel welcomes and always understood would occur in this case). *See id.* (endorsing the Second Circuit's decision in *Malchman* on "clear sailing" provisions).

As such, Class Counsel respectfully submits that the fact that the fee was negotiated at arm's length and will in no way reduce the funds available for the Class, supports approving the requested fee.

---

[6] *See e.g., Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement benefits); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding the district court's award of attorneys' fees where the court had approved attorneys' fees and costs of $5.2 million that were negotiated after the final settlement was achieved); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."). *Cf., Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Computer, Inc. Deriv. Litig.*, No. 06-4128, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.") (citation omitted).

## C.   The Second Circuit Has Approved Both The Percentage Method And The Lodestar Method, But The Percentage Method Is Preferred

Courts have developed two methods for awarding attorneys' fees in successful class actions: the percentage method and the lodestar/multiplier method. *Maley*, 186 F. Supp. 2d at 369. A court applying the percentage method "sets some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47 (citation omitted).[7] In doing so, the court considers six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50 (internal citations and quotation marks omitted). *Accord Polaroid*, 2007 WL 2116398, at *2. Courts

---

[7] In a "constructive fund" case such as this, it is appropriate to add the amount made available to the class to the fees requested to determine the value of the total fund for purposes of determining the percentage of the fund the fee request represents. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 12-3336, 2013 WL 2257859, at *3 (2d Cir. May 22, 2013); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); Manual for Complex Litigation, Fourth, § 21.71 p. 525 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class…"); *Hubbard v. Donahoe*, No. 03-1062, 2013 WL 3943495, at *4, 8 (D.D.C. July 31, 2013) (collecting cases) (awarding $910,000 of the $4,550,000 benefit to the class and holding that "the Court considers the separate funds for class recovery and attorneys' fees collectively as a 'constructive common fund,' valued at $4,550,000."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012) (collecting cases and awarding attorneys' fees equal to 20% of the settlement value and holding that "[h]aving two funds -- one for the claimants, one for the attorneys -- is a well-recognized variant of a common-fund arrangement."); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007) (awarding 22.5% of value of recovery and holding that "the Court believes that the settlement in this case represents a constructive common fund" despite the fact that "the settlement has separate funds for class recovery and attorneys' fees."); *Lopez v. Youngblood*, No. 07-0474, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) (awarding 28.5% of the percentage of the recovery where attorneys' fees were paid separate and apart from benefit to the class and citing with approval *Johnston* and *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839, at *4 (D.D.C. July 16, 2001)).

consider the same factors in applying the lodestar method. *Id.*[8] Here, the fee requested is plainly justified under either method.

### D.   The Requested Fee Is Justified Under The Percentage Method

### 1.   The Full Value Of The Settlement Fund Available Is Considered

Attorneys' fees awarded as a percentage of a fund must take into consideration the entirety of the fund, not only that portion received directly by the class members. *See Masters*, 473 F.3d at 437. In *Masters*, the Second Circuit held that: "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not. We side with the circuits that take this approach." *Id.*[9] The Court continued, "[o]ur own cases refer to 'percentage of the fund,' and 'percentage of the recovery.' We take these references to be to the whole of the Fund." *Id.* (emphasis in original, citations omitted). *See also Torres*, 2013 WL 2257859, at *3 (calculating fees "on the basis of the total funds made available."); *Aros v. United Rentals, Inc.*, No. 10-73, 2012 WL 3060470 (D. Conn. July 26, 2012) ("In applying the common fund method, the Supreme Court, the Second

---

[8] The Second Circuit has held that a district court may use either method. *Id.* However, the Second Circuit disfavors the lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 122 (internal citation omitted). The percentage method is considered preferable "because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks v. Stanley*, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (citation omitted).

[9] Citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) (approving district court's award of 33 1/3% based "on a percentage of the total fund rather than the actual payments made to class members."); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) (per curiam) (reversing the district court award of 33% of the claimed fund and instead awarded attorneys' fees of $4.5 million or 33% of the total funds that were available to the class even though the actual payout only totaled approximately $10,000.).

Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants.").[10]

Here, the Settlement provided for a benefit to the Class in the amount of $3,691,335, which includes the amount made available to the Class, the attorneys' fees and expenses and service awards sought, and the cost of administering the Settlement.  As such, Class Counsel's reasonable fee request of $894,805 represents 24.2% of the value of the Settlement.

### 2.     The Fee Award Is Supported By The *Goldberger* Factors

The 24.2% that Class Counsel is seeking and which Wells Fargo has agreed to pay separate and apart from the Class recovery is at the middle of the spectrum of fee awards repeatedly approved by the Courts of this Circuit, with many cases awarding close to 33% of the settlement value.  *See Taft v. Ackermans*, No. 02-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) ("Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of this size [$15.17 million] does not create such an issue."); *Hicks*, 2005 WL 2757792, at *9 ("A settlement amount of $10 million does not raise the windfall issue in the

---

[10] *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) (confirming the permissibility of using the entire fund as the appropriate benchmark); *Velez v. Novartis Pharmaceuticals Corp.*, No. 04-09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (quoting *Masters*, 473 F.3d at 437) ("[T]his Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not.'"); *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 443 (S.D.N.Y. 2004) (noting that attorneys' fees equivalent to one-third of common fund of $18.4 million was approved notwithstanding that only $5.6 million of the $18.4 was claimed by class members with the remaining $11.8 million unclaimed and reverting to the defendants); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (awarding $625,000 of $2.1 million fund amount despite only $500,000 in claims); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6, at 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

same way as would a $100 million settlement, and a 30% fee does not produce such a windfall.").  Moreover, the requested fee is eminently reasonable in light of the quality of the representation, the risk incurred by Class Counsel, and the other *Goldberger* factors.

      **a.**      **The Time And Labor Expended By Counsel**

The time and labor expended by Class Counsel are set forth in detail in the accompanying Declaration.  In general, counsel devoted more than 1,200 hours over the course of more than two and a half years spent prosecuting the actions.  As set forth above, before bringing these actions, Class Counsel exhaustively investigated the claims of Plaintiffs and the Class, and independently obtained copies of the relevant recorded mortgage and lien release documents. Blankinship Dec. ¶ 3.  After filing the actions, Class Counsel amended the complaints; opposed Defendants' motions to dismiss; and engaged in substantial discovery, which included conferring and writing letters to the Court on discovery issues, motion practice on the limitations period applicable to Plaintiffs' statutory claims, depositions of four Wells Fargo witnesses, a series of document requests and interrogatories to Defendants, review of over 2,000 pages of documents, data on over 2,800 lien releases produced by Wells Fargo and several hundred pages of documents produced by non-parties, discussing with Plaintiffs and drafting responses to Defendants' document requests and interrogatories, and preparing for further depositions of Wells Fargo witnesses, as well as depositions of Plaintiffs and a non-party. *Id.* ¶¶ 3-5.  In addition, Class Counsel engaged in a day-long mediation session with Defendants' counsel. *Id.* ¶ 7.

Moreover, Class Counsel is a modestly-sized firm comprising eight attorneys.  As a result, the time spent on this action in the hope of eventually obtaining a substantial verdict or settlement for the Class, and a fee for Class Counsel, was a significant commitment of the firm's

resources.  *Id.* ¶ 22.  While Class Counsel carefully screens its class action contingency matters to enhance its likelihood of success, there was absolutely no assurance that the extraordinary commitment of time and effort devoted to these actions would result in the payment of any fee at all.  *Id.* ¶ 23.  Moreover, the action was leanly staffed and efficiently managed, with three attorneys, Messrs. Blankinship and Garber and Ms. Hahn, accounting for nearly 80% of all time devoted to the case.  *Id.* ¶ 24.  Class Counsel should be amply compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class and should not be punished for its efficiency in achieving such a positive result.

### b.      The Magnitude And Complexity Of The Litigation

The requested fee award is reasonable in light of the magnitude and complexity of the litigation.  The Class itself comprises 7,624 members and Defendants agreed to a settlement making available $2,711,530 to the Class.  By any measure, the magnitude of the case is substantial, fully justifying Class Counsel's investment of time and labor, and fully merits the requested fee award.

### c.      The Risk Of The Litigation

As discussed above, Class Counsel and Plaintiffs faced substantial obstacles in successfully prosecuting this case.  The Second Circuit has recognized that the risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award. This factor is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys that prosecute them, and it embodies an assumption that contingency work is entitled to greater compensation than non-contingency work.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 592.

Of course, Class Counsel received no compensation while incurring the risks of the litigation.  Moreover, there was no way to know whether Class Counsel would ever be compensated for its substantial commitment to these actions.  In fact, the case law is littered with unsuccessful class actions that provided no relief to the putative class and no fee for class counsel.  *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 ("[T]he risk of non-payment in complex cases, such as this one, is very real.  There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.") (collecting cases).[11]

Class Counsel incurred 100% of the risk, devoting their time and labor to gather evidence of Defendants' suspected wrongdoing, evaluating Defendants' potential liability, analyzing potential legal theories, drafting the complaint, and engaging in substantial motion practice and discovery. Throughout, there was no assurance of success or compensation.  The requested fee award is entirely reasonable in light of the risks incurred by Class Counsel.

### d.      The Quality Of Representation

The quality of Class Counsel's representation is reflected in the reputation of Class Counsel; the experience of the attorneys principally involved in these action; and above all, the manner in which they prosecuted these actions from the pleadings, through motion practice and discovery, to the settlement negotiations and the instant motion for final approval.

---

[11] In numerous class actions, counsel was awarded no fee despite investing thousands of hours in the litigation. *See, e.g., In re Apollo Group, Inc. Sec. Litig.*, No. 04-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (setting aside jury verdict of $277 million based on insufficient evidence); *In re JDS Uniphase Corp. Sec. Litig.*, No. 02-1486, slip op. (N.D. Cal. Nov. 27, 2007); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million and entering judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning verdict in favor of plaintiff class based on subsequent change in law).

The Court has observed first-hand in these cases the skills and abilities of Class Counsel, and Class Counsel enjoys a strong reputation in the area of complex and class action litigation. Blankinship Dec. ¶¶ 12-13.  Class Counsel also appears to be the first firm to seek to represent a class of New York mortgagors who have claims under the N.Y. Real Prop. Acts. Law § 1921 and N.Y. Real Prop. Law § 275 for a bank's failure to timely present certificates of discharge.  *Id.* ¶ 15.  Moreover, Class Counsel has demonstrated its ability to successfully prosecute these actions, having survived motions to dismiss brought by highly experienced counsel and having wrested the proposed Settlement from an aggressive and well-healed bank.  Moreover, as demonstrated by its Firm Resume, attached as Exhibit 1 to the Blankinship Dec., its attorneys, including D. Greg Blankinship and Todd S. Garber, have been appointed class counsel in numerous other cases.

The Settlement negotiated with Defendants is a highly favorable outcome for the Class, and is the direct result of the creativity, diligence, hard work, and skill brought to bear by Class Counsel at every stage of the proceedings.  Throughout the litigation, Class Counsel has put the best interests of the Class ahead of its own, negotiating the most favorable settlement terms possible and then negotiating a fee to be paid by Wells Fargo, rather than the Class, and which in no way diminishes or erodes the benefits received by Class members.  Class Counsel's exemplary prosecution of this class action weighs strongly in favor of the proposed fee award.

The high quality of the opposition that Plaintiffs' counsel faced is a further testament to the quality of Plaintiffs' counsel's representation.  Defendants are represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases.  Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in

assessing the quality of the plaintiffs' counsel's performance, and in these cases, it supports

approval of the requested fee.  *See, e.g., In re Marsh Erisa Litig.*, 265 F.R.D. at 148

(reasonableness of fee was supported by fact that defendants "were represented by first-rate

attorneys who vigorously contested Lead Plaintiffs' claims and allegations").

### e.     The Requested Fee In Relation To The Settlement

The federal courts have established that a standard fee in complex class action cases like

this one, where the plaintiffs' counsel have achieved a good recovery for the class, ranges from

20 to 50 percent of the gross settlement benefit.  *Id.* at 149 (collecting cases and awarding

$11,665,500 or one-third of the recovery).  Plaintiffs are only requesting 24.2% of the value of

the settlement, and Plaintiffs secured Defendants' agreement to pay this amount separate and

apart from the benefit obtained for the Class.  On a percentage basis, the compensation requested

here is plainly well within the range of percentage fee awards within the Second Circuit,

particularly in cases with similarly sized settlement funds.

The $894,805 award for fees and expenses that Class Counsel has requested, and that

Wells Fargo has agreed to pay, is in line with awards from courts within this Circuit in similar

circumstances and leans towards the lower end given the particular facts of this case and the size

of the Settlement.

### f.     Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer

protection litigation.  *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010

WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (holding that if the "important public policy [of

enforcing consumer protection laws] is to be carried out, the courts should award fees which will

adequately compensate Lead Counsel for the value of their efforts, taking into account the

enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

The "purpose" of New York Real Property Actions and Proceedings Law § 1921 and New York Real Property Law § 275 is "[t]o insure that a certificate of discharge of mortgage is properly and timely issued and to impose a penalty on the lending institution or person holding the mortgage for failing to do so." Thus, the Settlement would deter transgressions of the statutes by banks and mortgagees in general. "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010).

Here, not a single Class member has yet objected to Class Counsel's requested fee. Nor are these cases mega fund cases and the requested 24% come nowhere near bestowing a windfall on Class Counsel (see lodestar cross-check *infra*). Therefore, the policy of awarding fees in a lower range to account for economies of scale and to prevent windfalls is not at issue here. Simply put, there is no reason to depart from the $894,805 that Wells Fargo has agreed to pay as this amount falls squarely within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar methodology, and any reduction would be against public policy as it could only serve as a disincentive to future class counsel from bringing similar cases and would reward the alleged wrongdoer for the benefit of neither the Class or the public at large.

Taking into account all the *Goldberger* factors, the $894,805 award to Class Counsel comprises a reasonable percentage of the benefit bestowed on the Class, and should be approved.

### E.      The Fee Is Justified Under The Lodestar/Multiplier Method

Application of the lodestar method confirms the reasonableness of Class Counsel's request.  Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method.  *Goldberger*, 209 F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized."  *Id.* (citation omitted).[12]

Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23.  *See also Maley*, 186 F. Supp. 2d at 370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted).  "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."  *In re Telik*, 576 F. Supp. 2d at 590 (a

---

[12] Pursuant to Second Circuit case law, concurrent with the filing of this memorandum, Class Counsel is submitting its contemporaneous and detailed time records to assess the propriety of Plaintiffs' attorneys' fee request for *in camera* review.  *See Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012) ("Nor do we identify error in the district court's failure to order disclosure of class counsel's contemporaneous time records, appended to the fee request and filed under seal . . . we are aware of no authority holding that class counsel must open its books to objectors for inspection by virtue of filing a fee motion.").  *See also In re Pall Corp.*, No. 07-3359, 2013 WL 3244824, at *3 (E.D.N.Y. June 25, 2013) (noting that "Court ordered Class Counsel to submit time records for in camera review.") (citing *Cassese*).

multiplier of 4 .65 was "well within the range awarded by courts in this Circuit and courts throughout the country") (citing *Maley*, 186 F. Supp. 2d at 369).[13]

The fee requested for these cases is more than justified under the lodestar method.  Class Counsel reasonably devoted in excess of 1,200 hours to these actions, including time spent researching the facts and the law, drafting the complaint, conducting discovery, motion practice, negotiating the settlement, and responding to hundreds of class members' inquiries.  Applying Class Counsel's hourly rates,[14] which are reasonable and well within the range typically charged by similarly well qualified counsel in this District, yields a lodestar of $800,869.34 with expenses.

There is no question that Class Counsel's time was spent efficiently.  Blankinship Decl. ¶ 24.  Moreover, Class Counsel has already factored potential inefficiencies into the lodestar, cutting hours for which Class Counsel actually billed.  *Id.*  Class Counsel's use of billing judgment recommends against any further deduction in the lodestar used for the purposes of performing a cross-check.

Moreover, the hourly rates charged by counsel are reasonable, indeed modest, by comparison with other firms in the Southern Districts.  "[T]he American Lawyer recently

---

[13] *See, e.g., Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-8472, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (Awarding lodestar multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and  noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC*, No. 08-10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *deMunecas v. Bold Food, LLC*, No. 09-440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.").

[14] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds.  *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).  *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

reported that the median billing rate for partners at many leading law firms exceeds $900/hour. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26.[15]

Comparing the lodestar with the requested fee of $894,805 yields a multiplier of 1.1. That multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken, the recovery achieved, risks involved, and the efficiency with which these cases were litigated. In sum, the 1.1 multiplier sought here is reasonable and within the range approved in past cases.

### F. The Reaction Of The Class Is Overwhelmingly Favorable

Courts give "great weight" to the reaction by members of the Class to a class action settlement. *Maley*, 186 F. Supp. 2d at 374 (citation omitted). Numerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee. *Id. See also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (lack of objections is "strong evidence" of the reasonableness of the fee request). Here, the Class Notice approved by the Court was mailed to 7,624 Class members. The Class Notice informed the Class members that Class Counsel would seek court approval of fees and expenses in an amount up to $894,805 and that Wells Fargo had agreed to pay such fees and expenses separate and apart from the relief provided to the Class. Not a single Class member has thus far objected to the fee request. Moreover, none of the 170 Class members who called to inquire about the claims process and the Settlement expressed any reservations about

---

[15] *See, e.g., In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *Chin v. RCN Corp.*, No. 08-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (hourly rates up to $880 were "not extraordinary for top New York law firms"); *Telik*, 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work).

Class Counsel's anticipated fee request. This "overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("Notice of the fee request and the terms of the settlement were mailed to 300,000 class members, and only two objected. We agree with the District Court such a low level of objection is a 'rare phenomenon.'").

## VIII. THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of these actions. *See* Blankinship Dec. ¶ 21. These expenses are properly recovered by counsel. *See In re China Sunergy Sec. Litig.*, No. 07-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'"). As set forth in detail in the declaration filed herewith, Class Counsel incurred $26,254.34 in litigation expenses on behalf of the Class in the prosecution of these actions. *Id.* Reimbursement of these expenses is fair and reasonable and the expenses are encompassed by the $894,805 request. *See, e.g., In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices and Products Liab. Litig.*, 09-MD-2102, 2010 WL 3422722, at *8-9 (S.D.N.Y. Aug. 24, 2010) (approving flat payment covering fees and expenses).

All of the expenses were reasonable and necessary to the prosecution of these actions, and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement.[16]

## IX.  SERVICE AWARDS

Providing service awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement.  *See Viafara v. MCIZ Corp.*, No. 12 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.  It is important to compensate plaintiffs for the time they spend and the risks they take.  The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted); *Elliot v. Leatherstocking Corp.*, No. 10-0934, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012) ("Service awards are common in class action cases and are important to compensate a plaintiff for the time and effort expended in assisting in the prosecution of the litigation.").

Class Counsel respectfully requests that the Court approve the payment of service awards to Plaintiffs in the amount of $5,000 each in recognition of their efforts on behalf of the Class.

---

[16] *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-1484, 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (same).

Pursuant to the Settlement Agreement, Wells Fargo has agreed to pay these awards using its own resources, which means these payments will not reduce the benefits provided to the Class members.  The requested payments are well deserved and fall well within the range of incentive awards approved in prior cases.  *Polaroid*, 2007 WL 2116398, at *3 (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions).  Moreover, as with Class Counsel's fee request, the service award request was subject to arm's length negotiations between parties and was adequately disclosed in advance to the Class and not yet objected to.

Plaintiffs reviewed, and discussed with Class Counsel, the pleadings, discovery demands, discovery responses and memoranda of law.  Plaintiffs conferred with Class Counsel regarding the status of the cases and the settlement negotiations, at all times encouraging Class Counsel to obtain the best possible result for the absent class members.  Blankinship Dec. ¶ 10.  Plaintiffs' participation was substantial and indispensable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement Agreement, certify the Class, and grant the request for attorney's fees and costs and service awards in the amounts indicated.

Dated:      March 31, 2016                  Respectfully submitted,

                                            **FINKELSTEIN, BLANKINSHIP, FREI-
                                            PEARSON & GARBER, LLP**

                                            By:      /s/ D. Greg Blankinship
                                                     D. Greg Blankinship
                                                     Todd S. Garber
                                                     Antonino B. Roman
                                                     1311 Mamaroneck Avenue
                                                     White Plains, New York 10605
                                                     Tel: (914) 298-3290
                                                     gblankinship@fbfglaw.com
                                                     tgarber@fbfglaw.com
                                                     aroman@fbfglaw.com

                                            *Attorneys for Plaintiffs and the Class*